GARY M. RESTAINO
United States Attorney
District of Arizona

SEAN K. LOKEY
Assistant United States Attorney
Arizona State Bar No. 033627
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: sean.lokey@usdoj.gov

TANYA SENANAYAKE
Trial Attorney
D.C. Bar No. 1006218
Counterterrorism Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave. NW, Suite 7600
Washington, DC 20530
Telephone: 202-514-0849
Email: Tanya.Senanayake3@usdoj.gov

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>  v.<br><br>James W. Clark,<br><br>  Defendant. | No. CR-22-00889-01-PHX-MTL<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS** |

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S OBJECTIONS TO DRAFT PRESENTENCE REPORT

The United States submits this response to Defendant James W. Clark's Objections to the Draft Presentence Report ("Obj."), ECF No. 58. The Draft Presentence Report ("Draft PSR"), ECF No. 53, contains the correct calculation for Defendant's Guidelines

range. The enhancements at U.S.S.G. §2A6.1(b)(1) and (b)(4) are clearly applicable here, and U.S.S.G. §2A6.1(b)(6) is neither applicable nor warranted.

## I. FACTUAL BASIS FOR ADJUSTMENTS AT ISSUE

The facts described below are derived from the Draft Presentence Report, ECF No. 53; Defendant's Objections to the Draft Presentence Report, ECF No. 58; the plea agreement, ECF No. 47; and the government's discovery production in this case. Defendant stipulated in the plea agreement that he sent the bomb threat at issue here to the Arizona Secretary of State's Office on February 14, 2021, at approximately 9:52 p.m. local Arizona time. Defendant also stipulated that he placed Public Official's first name into the subject line of the message. Further, the record in this case shows that Defendant conducted the following searches, at the approximate times listed below:

- February 14, 2021, at 9:47 pm local Arizona time: Defendant searched for "Arizona secretary of state" and visited the Arizona Secretary of State website at https://azsos.gov.

- **February 14, 2021, at 9:48 pm and 9:51 pm local Arizona time: Defendant visited the Contact Elections page of the Arizona Secretary of State's web site at https://azsos.gov/contact-elections.**

- February 14, 2021, at 9:52 pm local Arizona time: Defendant searched for "[Public Official's Full Name] crazy."

- February 14, 2021, at 9:52 pm local Arizona time: Defendant visited a website at https://www.kvoa.com/news/top-stories/2020/11/19/secretary-of-state-[Public Official's Full Name]-responds-to-threats-over-election-results/.[1]

---

[1] The website for this November 19, 2020 article appears to have changed to: https://www.kvoa.com/news/politics/secretary-of-state-[Public Official's full name]-responds-to-threats-over-election-results/article_5767a07e-046d-5d71-aca6-c62b3d0c84ac.html.

- 2 -

- February 14, 2021, at 9:52 pm local Arizona time: Defendant searched for "[Public Official's Full Name] address."

- February 14, 2021, at 9:53 pm local Arizona time: Defendant searched for "[Public Official's Full Name] how to kill."

- February 18, 2021, at 2:39 am local Arizona time: Defendant searched for "fema boston marathon bombing."

- February 18, 2021, at 2:42 am local Arizona time: Defendant searched for "fema boston marathon bombing plan digital army"

(Draft PSR ¶¶ 6, 7; ECF No. 47, at 7-8; Government Discovery Control No. 121.)

Defendant transmitted the charged bomb threat on Sunday, February 14, 2021. Monday, February 15, 2021, was a federal holiday. Then, on February 16, 2021, shortly after the 9 a.m. deadline for detonation of the threatened explosive device, staff members at the Arizona Secretary of State's Office read Defendant's message, were fearful, and immediately contacted law enforcement, which quickly responded to the situation. (Draft PSR ¶¶ 7, 9.)

In response, law enforcement partially evacuated the Arizona Secretary of State's Office and the floor of the Arizona Governor's Office, which is located in the same building as the Arizona Secretary of State's Office. (Draft PSR ¶¶ 7, 12.) Law enforcement ordered the governor and other employees in the building to shelter in place. (*Id*. ¶ 12.) Meanwhile, the Department of Public Safety ("DPS") searched for an explosive device with its canines on the floors of the Arizona Governor's Office and the Arizona Secretary of State's Office. (*Id*.) Additionally, DPS conducted bomb sweeps of both the Public Official's personal residence and her vehicle. (*Id*.) The law enforcement responses to Defendant's bomb threat impacted official business at the government building.

## II. RESPONSE TO OBJECTION #1: DRAFT PSR, ¶ 19

U.S.S.G. § 2A6.1(b)(1) is applicable based on the facts here. The standard of proof applicable to this inquiry is preponderance of the evidence. Further, even under a clear and convincing standard, the facts in this case clearly warrant the application of U.S.S.G. § 2A6.1(b)(1). *First*, defendant's conduct underlying this enhancement occurred contemporaneously with the charged conduct. *Second*, the internet searches that defendant conducted are on their face overt acts that evince intent to carry out Defendant's threat. *Third*, the enhancement applies regardless of defendant's purported health condition or likelihood that he in fact would detonate the threatened explosive device at the targeted government office.

### A. Standard of Proof

The government must meet a preponderance of the evidence standard here. Generally, a preponderance of the evidence standard applies to factual findings that form the basis for a sentencing enhancement. *United States v. Valle*, 940 F.3d 473, 479 (9th Cir. 2019). The government "must meet a higher standard—proof by 'clear and convincing evidence'—in cases where there is 'an extremely disproportionate impact on the sentence.'" *Id*. (quoting *United States v. Jordan*, 256 F.3d 922, 930 (9th Cir. 2001)).

Courts in the Ninth Circuit "look to the totality of the circumstances to see if that heightened standard applies." *Valle*, 940 F.3d at 479 (citing *United States v. Pike*, 473 F.3d 1053, 1057 (9th Cir. 2007)). Such factors include:

> (1) [W]hether "the enhanced sentence fall[s] within the maximum sentence for the crime alleged in the indictment;"
> (2) whether "the enhanced sentence negate[s] the presumption

of innocence or the prosecution's burden of proof for the crime alleged in the indictment;" (3) whether "the facts offered in support of the enhancement create new offenses requiring separate punishment;" (4) whether "the increase in sentence [is] based on the extent of a conspiracy;" (5) whether "the increase in the number of offense levels [is] less than or equal to four;" and (6) whether "the length of the enhanced sentence more than double[s] the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence."

*United States v. Jordan*, 256 F.3d 922, 928 (9th Cir. 2001) (internal citations omitted) (alterations in original).

Here, Defendant has not objected to the application of the victim-related adjustment applicable under U.S.S.G. §3A1.2(a)(1) and (2). (Draft PSR ¶ 21.) The Guidelines for Defendant are as follows:

|  | **Undisputed** | **Disputed** |
|---|---|---|
| Base Offense Level (USSG §2A6.1(a)(1)) | + 12 |  |
| Official Victim (USSG §3A1.2(a)(1), (2)) | + 6 |  |
| Evidence of Intent to Carry Out Threat (USSG §2A6.1(b)(1)) |  | + 6 |
| Disruption of Government Functions (USSG §2A6.1(b)(4)(A)) |  | + 4 |
| Total Offense Level | 18 | 28 |

In light of the Guidelines calculations from the Draft PSR, and with the acceptance of responsibility decrease, the total offense level for undisputed enhancements and adjustments is 15. Therefore, Defendant's Guidelines range without the disputed adjustments is 18-24 months. Defendant's Guidelines range with both enhancements that Defendant has disputed in Defendant's Objections is 57-60 months. (Draft PSR ¶ 55.)

The government has made the required factual showing under either the

preponderance of the evidence standard or the clear and convincing evidence standard. The facts concerning both Defendant's internet activity and his searches underlying the enhancement, as described above, are clear in the government's record evidence. That Defendant conducted the internet searches and visited the websites described above is not in dispute. Similarly, the facts underlying the results of Defendant's conduct—bomb sweeps of multiple locations, the use of DPS canines, and the evacuation of multiple government offices—are also not in dispute. (Draft PSR ¶¶ 7, 12; Obj. at 10.) The parties' dispute centers on the conclusions that the Court should draw from the facts in the record.

**B.   The Enhancement is Appropriately Supported by Defendant's Conduct Contemporaneous with and After Defendant's Transmission of the Bomb Threat**

Defendant's conduct included: 1) searching for the relevant website for the Secretary of State's Office, and then 2) visiting that site, 3) visiting another website containing an article about the Public Official responding to threats over election results, and also conducting additional searches with the Public Official's full name and the terms 4) "crazy," 5) "address," and 6) "how to kill," among other conduct as described above. Defendant conducted the aforementioned internet searches all within a span of approximately six minutes. As stated below, under the relevant caselaw, the government submits that this conduct, particularly searching for the Public Official's name in conjunction with terms such as "address" and "how to kill," warrants application of the enhancement. This is so, regardless of whether the Court deems that such conduct occurred immediately before, contemporaneously with, or immediately after sending the threat.

Defendant first objects to the application of the adjustment on the basis that the

offense was completed at Defendant's "press[ing] the send button" on the threat, and that two searches occurred after this fact. (Obj. at 1, 2.) But, as described above, conduct evincing an intent to carry out the threat occurred within a course of conduct that spanned approximately six minutes. The searches were contemporaneous to the offense conduct, occurring within minutes of sending the threatening communication. Additionally, Defendant conducted searches about a marathon bombing just four days after the date of the charged threat; these searches relate to the promised harm of the charged threat, to wit, the detonation of an explosive device.

Contrary to Defendant's assertion, Obj. at 3, Application Note 1 to U.S.S.G. §2A6.1 does not preclude consideration of factors after the offense or otherwise limit the temporal scope of the conduct that the court may consider when determining whether the enhancement applies. (*See* Obj. at 3.) The history of Application Note 1 reflects that the U.S. Sentencing Commission issued Application Note 1 to "address[] a circuit conflict regarding the enhancement in §2A6.1 that provides a 6-level increase if the offense involved any conduct evidencing an intent to carry out a threat," in particular, "whether or not conduct which occurred prior to the making of the threat can evidence an intent to carry out the threat." U.S. Sentencing Commission, Amendment 549 ("Reason for Amendment"), https://www.ussc.gov/guidelines/amendment/549 (citations omitted). Application Note 1 was not intended to preclude post-offense conduct from consideration, but rather was meant to clarify in light of the circuit split that "conduct which occurred prior to the offense" should be considered only where "the prior conduct is substantially and directly connected to the offense." *Id*.

Courts have routinely considered a defendant's conduct *after* a charged offense in determining whether the enhancement at issue applies. In *United States v. Smith*, a Ninth Circuit panel found that the district court did not clearly err in imposing a six-level enhancement for an intent to carry out threats where the defendant and his friends arrived at the victim's house after the defendant had made the threats. 365 F. App'x 781, 788 (9th Cir. 2010). Further, in *United States v. Dugan*, a Ninth Circuit panel found that the district court did not clearly err in finding that the defendant in that case engaged in conduct evidencing an intent to carry out a threat where the defendant had stipulated to the fact that, after the threat, he obtained an assault rifle and ammunition. 232 F. App'x 698, 699 (9th Cir. 2007); *see also United States v. Hines*, 26 F.3d 1469, 1474 (9th Cir. 1994) ("[Defendant's] subsequent actions were sufficient to justify the enhancement); *United States v. Wagoner*, 564 F. App'x 780, 783 (6th Cir. 2014) (affirming district court's finding that defendant's arrival at victim public office after transmitting a threatening communication warranted an offense level increase for conduct evidencing an intent to carry out the threat); *United States v. Bellrichard*, 62 F.3d 1046, 1051 (8th Cir. 1995) (affirming district court's finding that enhancement applied after considering defendant's statements after the charged conduct); *United States v. Green*, 25 F.3d 206, 207 (3d Cir. 1994) (affirming district court's application of enhancement where defendant attempted to obtain threat victim's address *three days* after charged threat) (emphasis added).

In fact, categorically excluding from consideration any evidence of intent to carry out a threat after the charged threat would lead to absurd results. *United States v. Thomas*, 155 F.3d 833, 839 & n.2 (7th Cir. 1998) ("[T]o illustrate the point more dramatically,

consider a scenario in which a defendant, several months after sending a threat, shoots out the windows of his victim's car and truck, narrowly missing the victim's child. . . . [I]t is undoubtedly probative of whether the defendant intended to carry through with his threat.").

### C. Internet Searches Constitute Overt Acts Sufficient for the Application of U.S.S.G. §2A6.1, and the Searches Here Warrant This Enhancement

Defendant's argument that internet searches without more are insufficient for the application of the enhancement, Obj. at 3, is also unavailing. Defendant's conducting of internet searches for further information about how to carry out the bomb threat that he transmitted, and for further information about the victim's whereabouts, constitute overt acts that warrant application of the enhancement here. A Ninth Circuit panel considered a similar situation in *United States v. Spangle*, in which the panel affirmed the district court's finding that the enhancement applied where certain lists were found in the defendant's prison cell after he had sent a threatening letter to a probation officer. *United States v. Spangle*, 281 F. App'x 693, 694 (9th Cir. 2008). The materials included, in part, lists with the probation officer's name and work address, of locations where a firearm can be concealed on one's body, and various methods of locating people, such as use of phone books and school records. *See* Brief for the United States, United States v. Spangle, No. 04-50311, 2005 WL 1153572, at *7–8 (Mar. 28, 2005). Further, in *United States v. Green*, the Third Circuit affirmed the district court's application of the enhancement at issue, concurring that the defendant's attempt to obtain the victim's address by asking a friend to run victim's license plate constituted an overt act sufficient for the enhancement. 25 F.3d

206, 207 (3d Cir. 1994). Defendant's internet searches are analogous to the overt acts in these cases, and application of the enhancement here is warranted.

### D. The Enhancement Applies Regardless of Defendant's Purported Health Condition or Likelihood of Carrying Out the Threat

Defendant also argues that the enhancement should not apply because he was not "likely" to carry out the bomb threat or capable of doing so. (Obj. at 4-6.) Section 2A6.1(b)(1) provides for a six-level enhancement if "the offense involved any conduct evidencing an intent to carry out" the threat for which the defendant was convicted. The adjustment's applicability "does not depend on the defendant's actual intent, which could exist regardless of whether any actions were taken toward carrying it out; rather it depends on whether or not the defendant engaged in conduct from which the court permissibly infers such an intent." *United States v. Berndt*, 127 F.3d 251, 259 (2d Cir. 1997). Defendant's admonition to "distinguish between the risky threats from the riskless threats," Obj. at 5, carry no weight when the recipients of the threat, and the law enforcement agencies responding to the threat, have no indication at the time that Defendant was or was not intending to do what he threatened—to detonate an explosive device. If a threat is perceived as a serious threat to life and safety, as both the victims and responding law enforcement perceived Defendant's threat here, then the threat is not "riskless." And while Defendant argues that his physical limitations prevented his carrying out the threat, Obj. at 6, the relevant inquiry here "is not whether [the defendant] was physically able to carry out his threats against [the victim], but whether his undisputed conduct demonstrated his intent to do so." *United States v. Nickerson*, 782 F. App'x 377, 380 (6th Cir. 2019).

The record shows that Defendant accessed an article about the victim, searched for "how to kill" the victim, and searched for the address of the victim at the same time as he transmitted a bomb threat to the victim's office. The record also shows that, four days after transmitting the threat, Defendant searched for information about the Boston Marathon bombing. These searches clearly evince intent to carry out the threat for which Defendant was convicted.

### III. RESPONSE TO OBJECTION #2: DRAFT PSR, ¶ 20

The Draft Presentence Report appropriately applied four offense levels because Defendant's threat here caused substantial disruption of public, governmental functions and services. (Draft PSR, ¶ 20 (citing U.S.S.G. §2A6.1(b)(4)(A).) The term "substantial disruption" of government and public functions and services "suggests a significant interruption of normal activities when measured by scope and time." *United States v. Anwar*, 741 F.3d 1134, 1137 (10th Cir. 2013) (citation omitted). As Defendant notes, Obj. at 11, in *United States v. Dudley* the Eleventh Circuit affirmed the district court's finding that the "substantial disruption" enhancement applied there. The facts in the *Dudley* case are similar to those presented here: The defendant had mailed an envelope containing white powder to a judge, and this threat letter caused half of a state courthouse floor to close for two hours, two people to be quarantined, and interruptions to the court proceedings of two judges for several hours, as well as the recipient judge being required to spend "many hours" discussing the case with law enforcement. *United States v. Dudley*, 463 F.3d 1221, 1224–26 (11th Cir. 2006).

At bottom, Defendant argues that the U.S.S.G. §2A6.1(b)(4)(A) enhancement is

inapplicable because his bomb threat was not sufficiently disruptive. The record shows that, in response to Defendant's threat, law enforcement evacuated parts of the Arizona Secretary of State's Office and the floor of the Arizona Governor, and that law enforcement ordered the Arizona Governor and other employees in the building to shelter in place. (PSR ¶ 7.) The record also shows that DPS searched for an explosive device with its canines on the floors of the Arizona Governor and the Arizona Secretary of State's Office and that it conducted bomb sweeps of both Public Official's personal residence and her vehicle. (PSR ¶¶ 7, 12; Plea Agreement at 8.) Clearly, Defendant's bomb threat substantially disrupted state government and public functions. The application of the enhancement is warranted on the facts presented here.

**IV.  RESPONSE TO OBJECTION #3: USSG §2A6.1(b)(6), REDUCTION ONLY IF SUBDIVISIONS (b)(1)-(4) DO NOT APPLY**

Pursuant to USSG §2A6.1(b)(6), a 4-level reduction applies where the threat involved "a single instance evidencing little or no deliberation," but <u>only</u> in instances where none of the other enhancements at U.S.S.G. §2A6.1(b)(1)-(4) apply. Here, as described above, the enhancements for §2A6.1(b)(1) and §2A6.1(b)(4) both apply, and therefore, defendant is not entitled to such a 4-level reduction, even if his actions were seen as otherwise qualifying. While the threat sent was a single threat, the multiple actions of defendant detailed above, to wit, visiting different websites and conducting multiple searches, indicate more than the "little or no deliberation" required for this adjustment. What is more, Defendant's actions resulting in a canine search, bomb sweeps, evacuation of multiple governmental offices, and public employees sheltering in place, certainly

caused the substantial disruption warranting the application of U.S.S.G. §2A6.1(b)(4). Applying either of the enhancements at (b)(1) or (b)(4), makes the 4-level reduction of §2A6.1(b)(6) inapplicable, and here, both enhancements apply.

For the above reasons, the government requests that the Court deny Defendant's objections to the Draft Presentence Report.

Respectfully submitted this 26th day of February, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

/s/  Sean K. Lokey
Sean K. Lokey
Assistant U.S. Attorney

/s/  Tanya Senanayake
Tanya Senanayake
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice

# CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2024, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for the defendant.

/s/ *Tanya Senanayake*
Tanya Senanayake
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice