JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

JEANETTE E. ALVARADO, #016111
Asst. Federal Public Defender
Attorney for Defendant
jeanette_alvarado@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>           Plaintiff,<br><br>    vs.<br><br>James W. Clark,<br><br>           Defendant. | No. CR-22-00889-PHX-MTL<br><br>**SENTENCING MEMORANDUM<br>AND<br>DOWNWARD VARIANCE REQUEST** |

Mr. Clark requests the Court consider the entirety of his history and not just the events of February 14, 2021, and impose a five-year probationary term and if a term of incarceration is deemed necessary, to impose no more than a ten-month sentence as a condition of probation, partially intermittently and partially on home confinement.

The U.S. Sentencing Guidelines allow the Court to impose intermittent incarceration as a condition of a probation. And Mr. Clark would propose he serve

1

four months incarceration[1] intermittently and six months in home confinement, so he can continue with his recovery and rehabilitation, as well as his employment.

Should the Court determine a straight incarceration sentence is necessary, Mr. Clark requests the Court impose a sentence not exceeding 12 months and a day, given his physical and mental state when he committed the crime, the fact no evidence exists he had any intent or ability to commit the crime because it was really an empty threat made while intoxicated and using drugs, and to consider the extensive rehabilitative strides he has made meanwhile.

### U.S. Sentencing Factors

U.S. law mandates the Court consider multiple factors, along with the sentencing guideline range, when deciding on the appropriate sentence that is "sufficient, but not greater than necessary" to impose a just sentence:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed—
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> **(3)** the kinds of sentences available.

18 U.S.C. 3553(a).

---

[1] Mr. Clark requests the Court consider he serve the four-month term in intermittent confinement, as allowed under the statute. Counsel has conferred with Bureau of Prison's officials in Boston, Massachusetts and officials have identified a local jail facility where Mr. Clark would be able to serve an intermittent confinement sentence.

*Nature of the Offense:*   Mr. Clark admits the nature and circumstances of the offense are serious.  He is ashamed he committed this crime and sorry for the effect it had on those receiving the threat. Mr. Clark agrees the threat was a "true threat" as defined by statute and admits to all the elements of the offense.  It must be repeated however, that the threat was a one-time event and always a hoax. And because of that, Mr. Clark's sentence should differ from those who threaten and have an intent and ability to carry out the threat, or who commit a threat crime on more than one occasion, or who continue to threaten after being told to stop by authorities – none of these facts exist in Mr. Clark's case.

   Mr. Clark had no intent and no ability to carry out the threat.  He was in the Boston, Massachusetts area in his mother's home with no access to or knowledge of bomb-making. Medical records spanning years of Mr. Clark's life both before and after this offense paint a sad picture of a man lost in his addiction, not thinking clearly, sinking into his trauma and not living the life he had imagined he should be living.  At that moment, feeling sorry for himself he lashed out at someone he had nothing to do with and who had nothing to do with him. Mr. Clark was not invested in the Arizona election.  He did not believe the 2020 election was stolen.  When he was questioned by law enforcement, their conversation jogged his memory regarding an episode of John Stewart's comedy show that highlighted the public official in question being sued for unlawful discrimination.  Mr. Clark hates discrimination and racism and believes in his drunken state he sent the threatening message as a response to finding out that information, and agrees it was meant to frighten and that someone receiving it would have reason to be scared.

   However, the intent to frighten differs from the intent to follow through on a threat and Mr. Clark should not be sentenced to a 57-month term that the prosecution requests which would be in line with someone who not only voiced a threat but had

intent, means or plans to follow through. To sentence Mr. Clark to a 57-month sentence would be to punish him more severely than others in similar circumstances and to run afoul of federal sentencing law.

In prior pleadings, Mr. Clark has laid out a timeline and underlying circumstances regarding his committing the crime and will not repeat them here. Instead, Mr. Clark will focus on the remaining sentencing factors the Court must consider when imposing a sentence that is "sufficient, but not greater than necessary."

### IMPORTANCE OF NOT CREATING SENTENCING DISPARITY

Defense counsel provides a list of other cases involving (1) bomb threats, (2) threats to officials in other districts and (3) threats to officials in Arizona, for the Court to compare the sentences imposed in those cases to the sentence requested by the Government.

Mr. Clark respectfully suggests that after the Court compares the fact scenarios in those cases with Mr. Clark's actions, it will conclude that a downward variance is called for in his case and a sentence much lower than the guideline sentence should be imposed.

#### (1) Other Federal Cases Involving Bomb Threats

In the following bomb threat cases, lesser incarceration sentences were imposed than the 57-month custody term the government requests here. The facts in these cases are worse than those in Mr. Clark's case, either due to the extent of the threat, the reasoning behind the threat, the number of threats made, the defendant's history of making prior threats, and the scope of law enforcement's response to the threat. The shortest sentence was eight months of incarceration with two months served in home detention. The longest sentence imposed was 24 months in custody.

4

*U.S. v. William H. Klein*[2] (Middle District of Pennsylvania, 2014): Defendant sentenced to *eight months custody*, with two months to be served on home detention with electronic monitoring after pleading guilty to Interstate Communication with Threat to Injure, for calling in a bomb threat to a local stadium resulting in the stadium being locked-down before a concert, bomb sweeps being performed, and a bag check performed of all patrons entering the stadium.

*U.S. v. Mary Fortner*[3] (Southern District of Indiana, 2023): Defendant sentenced to *ten months custody* after pleading to two counts of bomb threats on two separate dates. The first threat was to a school she worked at as a substitute; the second was a month later making bomb threats to several locations in town.

*U.S. v. Travail McLean*[4] (District of Connecticut, New Haven, 2012): Defendant received an *18-month custody* term for making false bomb threats on *15 different occasions* to various locations in the city, including a police station and home for the elderly, each time causing emergency response teams to clear the area threatened and conduct thorough bomb searches.

*U.S. v. Patrick Cau*[5] (Central District of California, Los Angeles, 2013): Defendant received an *18-month prison* term for making *eight bomb threats over a four-month* period from payphones in Los Angeles, New York City, Las Vegas and Seattle, that a specific United flight would be bombed, resulting in substantial disruption as flights were cancelled, aircrafts were towed, passengers were evacuated, searched and re-screened as was all baggage and cargo, and multiple law enforcement agencies responded, which resulted in a $304,495 restitution order.

---

[2] FBI Press Release, Philadelphia Division, February 25, 2014 (https://archives.fbi.gov/archives/philadelphia/press-releases/2014/new-jersey-man-sentenced-on-federal-bomb-threat-charge)

[3] U.S. Attorney's Office, Southern District of Indiana, Press Release, dated 9/18/2023 at https://www.justice.gov/usao-sdin/pr/former-crawford-county-substitute-teacher-sentenced-ten-months-federal-prison-sending

[4] FBI Press Release, New Haven Division dated 9/18/2022 at https://archives.fbi.gov/archives/newhaven/press-releases/2012/new-haven-man-sentenced-to-18-months-in-federal-prison-for-phoning-in-bomb-threats

[5] FBI Press Release, Los Angeles division dated 11/25/2013 at https://archives.fbi.gov/archives/losangeles/press-releases/2013/former-united-airlines-flight-attendant-sentenced-to-federal-prison-for-making-bogus-bomb-threats-aimed-at-his-former-employer

***U.S. v Tommy Jay Hollis***[6] (Northern District of Texas, Wichita Falls, 2022): Defendant posing as a friend submitted a bomb threat with the intent that law enforcement arrest his friend. Defendant had a ***history of making threats*** in other people's names, to include falsely reporting an attack on a school which resulted in local police adding extra officers to protect every school in the district for two days. Defendant received a sentence of ***two years in custody***.

### (2) Threats to Officials Cases in Other Districts

***U.S. v. Katelyn Jones***[7] (Eastern District of Michigan, 2024): Defendant was convicted for sending ***multiple threats*** to a Michigan election official's personal cell phone toward the official and minor daughter). Graphic photos of a mutilated/injured female also sent to the same public official. Later, defendant posted threats on a social media page. Judge imposed ***30-day jail*** due to defendant's mental/physical health she had been experiencing when committing the threatening offenses.

***U.S. v. Travis Ford***[8] (District of Nebraska, 2022): Defendant sentenced to ***18 months*** prison for making ***multiple threats*** to an election official on social media including stating that official's security detail was "far too thin and incompetent to protect you." The Defendant also made threats to the President of the United States and another public official.

### 3) Threats Cases in District of Arizona

***U.S. v. Kerr***, CR20-00513-PHX-DLR: Defendant convicted for sending a series of ***ongoing interstate harassing communications***, including anti-Semitic slurs threatening to injure and kill the victim, was sentenced to ***five years of probation*** with condition he serve six months incarceration and six months of home confinement.

---

[6] U.S. Attorney's Office Press Release, Northern District of Texas, dated 3/25/2022 at https://www.justice.gov/usao-ndtx/pr/man-sentenced-two-years-hoax-bomb-threats

[7] Office of Public Affairs, DOJ, New Hampshire dated 3/2/2023 at https://www.justice.gov/opa/pr/woman-pleads-guilty-threatening-election-official and https://michiganadvance.com/briefs/new-hampshire-woman-sentenced-for-2020-threats-against-wayne-co-gop-official/

[8] Office of Public Affairs, DOJ, Nebraska, dated 10/6/22 at https://www.justice.gov/opa/pr/man-sentenced-prison-threatening-election-official

***U.S. v. Steinbart***, CR-20-0485-PHX-SPL: **Over a period of three days**, Defendant committed the crime of threatening interstate communications with intent to extort, by threatening to degrade and destroy a company's business operations and directed subscribers of his YouTube channel to flood the company's tech support line with fictious emails and calls to hinder the company's ability to operate. Judge Logan imposed a sentence of ***time-served (225 days)*** with a period of supervised release to follow.

***U.S. v. Martis***, CR-21-08140-PHX-DJH: Defendant called Speaker Pelosi's Washington Office from Arizona and left ***two voicemails*** threatening death to Speaker Pelosi, and this was after FBI had previously approached him and warned him about making similar calls in the past. Judge Humetewa imposed a sentence of ***21 months*** in custody, following by supervised release.

<u>Arizona cases with worse facts than Mr. Clark's case and
where sentences of at least 33-months in prison or more were imposed,
but still less than the 57-month prison term requested by the government</u>.

***U.S. v. De La Torre***, CR-16-0858-TUC-DCB: From March 21, 2016 – April 1, 2016, defendant made approximately ***20 bomb threats*** to various business and government offices in the Tucson and Phoenix area, including schools and military recruiting stations, resulting in many closures and evacuations. Judge Bury imposed a custody term of ***33 months*** with supervised release to follow.

***U.S. v. Knight***, CR-10-00176-PHX-MTL: Ordered by an Arizona judge to wear an ankle monitor in connection with pending criminal charges for assaulting a public defender, the defendant cut off his ankle monitor and fled to Washington state. While there, the defendant posted threats on Facebook to physically injure the assault victim and was charged with transmitting interstate communication threats to injure. Judge Liburdi imposed a ***33-month incarceration*** term and supervised release term.

***U.S. v. Lee***, CR-19-2946-TUC-LAB: Defendant was convicted after trial for disputing operations at Lukeville Port-of-Entry by engaging in an hour-long standoff where he ***repeatedly threated to shoot and kill*** US Border Patrol Officials. A search of defendant's vehicle revealed multiple loaded firearms. Judge Bowman imposed a sentence of ***33 months*** for threatening port officials.

***U.S. v. Rissi*** (2023)*:* Defendant called an Arizona public official and said "we're going to hang you." Months later, Defendant called a second public official with a similar threat of "Torches and pitchforks. That's your future dipshit." When

interviewed by FBI regarding the threats, defendant backed off his statements but told agents he still wished violent harm on election officials and that "a lot of people still need to be hanged." A sentence of **30 months** was imposed for **two counts** of interstate threats.

Therefore, Mr. Clark submits that to treat him fairly compared to other defendants both similarly and dissimilarly situated, the Court must apply a downward variance from the sentence requested by the prosecution.

### DETERRENCE, RESPECT FOR THE LAW, NEED TO PROTECT THE PUBLIC AND FOR REHABILITATION

*Deterrence*: A review of Mr. Clark's history and recent recovery efforts over the past three years, show that for specific deterrence the imposition of an incarceration sentence is unnecessary. Ms. Clark is on a new path in life. He is employed, sober, in a stable relationship with plans to wed his girlfriend, considering starting a family, getting additional training to obtain better employment and most of all, continuing his recovery efforts daily, not only for his individual benefit, but also his recovery community and peer group. He attends recovery meetings multiple times per week and is active in Narcotics Anonymous, leading groups and facilitating meetings. Letters written by Mr. Clark's family, friends, boss, and fellow recovery participants, confirm the strides made by Mr. Clark in his sobriety. This offense occurred because of his uncontrolled substance abuse and his failing mental health, but with that stable now, this conduct will not reoccur. General deterrence is another factor for the Court to consider and Mr. Clark proposes that strict probationary conditions with added conditions that includes jail as a condition of probation will signal to the public that this crime is serious and not to be engaged in.

*Respect for the Law*: Mr. Clark has shown respect for the law by abiding completely with his Pre-Trial Release conditions and how he conducts his life daily. Imposing a five-year term of probation on Mr. Clark will have him under supervision

for a long time and with his continued reporting instructions, orders to drug test and continue his recovery efforts, and to abide by all other conditions, this will show Mr. Clark the law is to be respected.

**Protection of the Public**: Mr. Clark is not a danger to society.  His threat was an empty one fueled by his unhappiness at his situation of abusing drugs and alcohol and his unattended mental health issues that led him to lash out at someone who had nothing to do with his life.  He has addressed these issues through recovery and treatment. He is no longer using drugs and is mentally in a good place.  Therefore, imposing any prison term is not needed to protect the public from Mr. Clark.

*Rehabilitation*:  Mr. Clark will not qualify for the 500-hour substance abuse rehabilitation program because he has been sober for the past 12-months before his arrest.  He does not need that type of programming because he has done substance abuse treatment for three years now (since late February/early March 2021), when he entered an inpatient substance abuse program, remained there until he transitioned to a sober living home and continued out-patient treatment, both which he continues to this day.  Therefore, Mr. Clark is working more on his sobriety and helping others through theirs, in the community, than he would be if incarcerated.

## Conclusion

Mr. Clark has submitted various objections to the Pre-Sentence Report in separate pleadings and submits they should all be sustained.  Attached is Mr. Clark's chart outlining the different options to the Court depending on whether the Court sustains or overrules his objections.

However, even if the Court does not sustain all the objections, an objective review of the brevity of Mr. Clark's offense, his intent, his ability, his physical/mental state when committing the offense, and his behavior since then,

results in the conclusion that a substantial variance is warranted and Mr. Clark respectfully requests the Court apply a substantial variance.

Respectfully submitted: March 3, 2024.

JON M. SANDS
Federal Public Defender

 *s/Jeanette E. Alvarado* 
JEANETTE E. ALVARADO
Asst. Federal Public Defender