GARY M. RESTAINO
United States Attorney
District of Arizona

SEAN K. LOKEY
Assistant United States Attorney
Arizona State Bar No. 033627
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: sean.lokey@usdoj.gov

TANYA SENANAYAKE
Trial Attorney
D.C. Bar No. 1006218
Counterterrorism Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave. NW, Suite 7600
Washington, DC 20530
Telephone: 202-514-0849
Email: Tanya.Senanayake3@usdoj.gov

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>James W. Clark,<br><br>    Defendant. | No. CR-22-00889-01-PHX-MTL<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

## UNITED STATES' SENTENCING MEMORANDUM

On February 14, 2021, Defendant James W. Clark sent a web communication to the Arizona Secretary of State's Office that contained a bomb threat. Defendant was subsequently charged with one count each of 18 U.S.C. §§ 844(e) (bomb threat), 1038 (bomb hoax), and 875(c) (interstate threatening communication). Defendant pled guilty to

one count of transmitting an interstate threatening communication. Threats such as that sent by Defendant represent a growing problem of national concern: As is true in this case, threats leave election officials and workers fearful for their lives and for the safety of their families.

For the reasons discussed below, a within-Guidelines sentence of 57 months of imprisonment for Defendant is sufficient but not greater than necessary to comply with the purposes outlined in 18 U.S.C. § 3553.

I.  **BACKGROUND**

The Draft Presentence Investigation Report ("PSR"), ECF No. 53; the plea agreement ("Plea Agreement"), ECF No. 47; and the Government's Response in Opposition to Defendant's Objections to the Draft Presentence Report ("Gov't Resp."), ECF No. 63, provide detailed information regarding the facts underlying the charged conduct, so the government only briefly describes the facts here.

On or about February 14, 2021, at approximately 9:52 p.m., local Arizona time, while in Yarmouth, Massachusetts, Defendant submitted an electronic communication to an official ("Public Official") with the Arizona Secretary of State's Office in Phoenix, Arizona, via the "Contact Elections" online form of the Arizona Secretary of State's Office website. (Plea Agreement, at 7.) In the subject line of this message, Defendant wrote the first name of Public Official. (*Id.*) In the body of the communication, Defendant wrote, "Your attorney general needs to resign by Tuesday February 16th by 9 am or the explosive device impacted in her personal space will be detonated. Thanks!!!!! Don." (*Id.*; PSR ¶¶ 2,

6.) In the "Name" section of the communication, Defendant wrote, "Donny Dee." (Plea Agreement, at 7.)

Further, Defendant conducted the following searches, at the approximate days and times listed below, with the transmittal of the charged communication bolded in the below sequence:

- February 14, 2021, at 9:47 p.m., local Arizona time: Defendant searched for "Arizona secretary of state" and visited the Arizona Secretary of State website at https://azsos.gov.

- **February 14, 2021, at 9:48 p.m. and 9:51 p.m., local Arizona time: Defendant visited the Contact Elections page of the Arizona Secretary of State's web site at https://azsos.gov/contact-elections.**

- February 14, 2021, at 9:52 p.m., local Arizona time: Defendant searched for "[Public Official's Full Name] crazy."

- February 14, 2021, at 9:52 p.m., local Arizona time: Defendant visited a website at https://www.kvoa.com/news/top-stories/2020/11/19/secretary-of-state-[Public Official's Full Name]-responds-to-threats-over-election-results/.[1]

- February 14, 2021, at 9:52 p.m., local Arizona time: Defendant searched for "[Public Official's Full Name] address."

- February 14, 2021, at 9:53 p.m., local Arizona time: Defendant searched for "[Public Official's Full Name] how to kill."

- February 18, 2021, at 2:39 a.m., local Arizona time: Defendant searched for "fema boston marathon bombing."

- February 18, 2021, at 2:42 a.m., local Arizona time: Defendant searched for "fema boston marathon bombing plan digital army"

---

[1] The website for this November 19, 2020 article appears to have changed to: https://www.kvoa.com/news/politics/secretary-of-state-[Public Official's full name]-responds-to-threats-over-election-results/article_5767a07e-046d-5d71-aca6-c62b3d0c84ac.html.

(PSR ¶¶ 6, 7; Plea Agreement, at 7-8; Gov't Resp. at 2-3.)

Defendant transmitted the charged bomb threat on Sunday, February 14, 2021. Monday, February 15, 2021, was a federal holiday.[2] Then, on February 16, 2021, shortly after the 9 a.m. deadline for detonation of the threatened explosive device, staff members at the Arizona Secretary of State's Office read Defendant's message, were fearful, and immediately contacted law enforcement, which quickly responded to the situation. (PSR ¶ 7.)

In response, law enforcement partially evacuated the Arizona Secretary of State's Office and the floor of the Arizona Governor, which is located in the same building as the Arizona Secretary of State. (PSR ¶ 7.) Law enforcement ordered the governor and other employees in the building to shelter in place. (PSR ¶ 12.) Meanwhile, the Department of Public Safety ("DPS") searched for an explosive device with its canines on the floors of the Arizona Governor and the Arizona Secretary of State's Office. (*Id*.) Additionally, DPS conducted bomb sweeps of both the Public Official's personal residence and her vehicle. (*Id*.) The law enforcement responses to Defendant's bomb threat impacted official business at the government building. (*Id*.) Further, after investigation into the source of the threat and tracking the IP address for the threat, DPS coordinated with the Massachusetts State Police to approach and interview Defendant on February 25, 2021. (PSR ¶¶ 7, 8.)

---

[2] U.S. Office of Personnel Mgmt, Federal Holidays: Historical Data (2023-2011), https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Historical-Data.

On July 26, 2022, Defendant was charged by indictment with one count of making a bomb threat, one count of perpetrating a bomb hoax, and one count of communicating an interstate threat. (Indictment, ECF No. 3.) On August 11, 2023, Defendant pled guilty to one count of transmitting an interstate threat. (Plea Agreement, at 2.) Defendant acknowledged that the circumstances of his sending the message described above were such that it may reasonably be believed that Defendant placed or would detonate an explosive or other lethal device in a place of public use or a state or government facility. (Plea Agreement, at 8.) Defendant also acknowledged that he sent the message charged in this case for the purpose of issuing a true threat and acknowledged that a reasonable recipient would have interpreted the message that he transmitted as a true threat. (*Id*.)

## II.     SENTENCING RECOMMENDATION

### A.     The Court Should Sentence Defendant to 57 Months of Imprisonment

Defendant's conduct warrants a term of imprisonment within the Guidelines range—here, 57 months, which would be sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553. The government makes this recommendation on the basis that a Guidelines sentence would be appropriate. The Draft Presence Report, ECF No. 53, correctly calculates the Guidelines range as 57 to 60 months. The government recommends a term of imprisonment of 57 months, at the low end of this Guidelines range,[3] though the government understands that Defendant plans to

---

[3] The government further recognizes that Defendant has objected to several sentencing enhancements, ECF No. 58, in the Draft Presence Report, and the government has responded to those objections, ECF No. 63. The Court's determination on the application of the disputed enhancements may affect the Defendant's Guidelines range. To the extent that the Defendant's sentencing range ultimately differs from the current range proposed in the Draft Presence Report, the government notes that it intends to

present mitigation information that the Court may find warrants a below-Guidelines sentence.

Defendant pled guilty to one count of violating 18 U.S.C. § 875(c), which criminalizes "transmit[ting] in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another." 18 U.S.C. § 875(c); *see* Plea Agreement at 2. In the Plea Agreement, the parties made no agreements as to sentencing. (Plea Agreement at 3.)

B.   The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

The nature and circumstances of Defendant's offense conduct justify the Guidelines term of imprisonment that the government seeks here. In response to Defendant's bomb threat, law enforcement evacuated some workers on the floors of the Arizona Secretary of State's Office and the Arizona Governor's Office. Law enforcement ordered the governor and other employees in the building to shelter in place. Meanwhile, the Department of Public Safety ("DPS") searched for an explosive device with its canines on the two floors. And the Public Official was subjected to bomb sweeps of both her home and her vehicle.

Employees at the Arizona Secretary of State's Office who received the communication and responding law enforcement had no way of knowing that Defendant did not intend to detonate an explosive device. The law enforcement response—the immediate evacuations, orders to shelter in place, canine bomb sweeps, exigent circumstances investigative work to find the identity of Defendant—and the fear that

---

seek a sentence within the Guidelines range as determined by the Court.

Defendant's threat engendered among the staff in that building are entirely reasonable, foreseeable, and a direct result of Defendant's conduct. In fact, Defendant has stipulated as such, "acknowledg[ing] that a reasonable recipient would have interpreted the web contact message that he transmitted as a true threat." (Plea Agreement, at 8.)

Yet in a recent prior filing, Defendant states that "evidence shows that [Defendant] was under the influence of drugs and alcohol, when he committed the crime," and that "[h]e was drunkenly trolling the internet, sitting inside a room in his family member's home, [and] binge drinking and using drugs every day . . . ." (ECF No. 58, at 6.) No such evidence is in the record, and Defendant cites to no support for this assertion.

Additionally, Defendant filed a post-charge psychopharmacology evaluation under seal that suggests in part that other factors may have caused Defendant to lack the requisite subjective intent for the charged conduct.[4] Defendant argues that this report "outlines [Defendant]'s alcohol and drug use at the time of the offense and lays out Dr. [James D.] Stoehr's expert opinion regarding the cognitive, emotional, and behavioral effects of these psychoactive substances." (ECF No. 58, at 7.) Defendant also describes this report as "stat[ing] the quantity and types of substances [Defendant] was using, significantly impaired his cognition (decision making, higher reasoning), emotional stability and behavioral control (impulsivity)"; and that "the quantity of alcohol he was drinking (daily binge drinking) affected his sensory functions, concentration, attention, reaction time, decision making, judgment, informational processing, and memory

---

[4] The government cites to Defendant's descriptions of this report from Defendant's publicly docketed Objections to the Draft Presentence Report, ECF No. 58, for purposes of discussion here.

formation, up to the point of blackouts." (*Id*.) Yet the writer based his analysis on medical records and did not state that he directly observed Defendant at the time he transmitted the charged threat.

The government acknowledges that Defendant has faced difficult, challenging circumstances, and it understands that Defendant plans to present mitigation information that the Court may find warrants a below-Guidelines sentence. At the same time, however, Defendant appears to be wavering in truly accepting responsibility for his conduct here. At bottom, Defendant is attempting to have it both ways—to distance himself from the charged conduct and the requisite subjective intent underlying the charge by arguing that he was "under the influence of drugs and alcohol," ECF No. 58, at 6, when he committed the offense, while accepting the benefits of a plea for which Defendant has admitted that he had the "purpose of issuing a true threat" when he transmitted the charged bomb threat. (Plea Agreement, at 8.)

    C.    <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense (18 U.S.C. § 3553(a)(2)(A))</u>

The government's sentencing recommendation accounts for the seriousness of the offense, which strikes at one of the tenets of our government: that public officials should be able to do their jobs free from fear and intimidation. Further, Defendant targeted the Public Official for her role in the administration of elections in Arizona. As described below, public officials and workers who administer elections have faced a growing number of threats to their lives and the safety of their families, and such threats have often disrupted or made more difficult the functioning of government and the administration of elections.

Given Defendant's conduct, a meaningful sentence is necessary to promote respect for the law and provide just punishment commensurate with the fear and government disruption that Defendant caused.

D. <u>The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct (18 U.S.C. § 3553(a)(2)(B))</u>

A Guidelines term of 57 months' of imprisonment would adequately serve the purpose of general deterrence. The government possesses no information that indicates that the Defendant will commit similar offenses in this district. However, election officials and workers report that they are targeted by threats across the nation, and this disturbing trend underscores the need for general deterrence.

According to one survey, for instance, nearly one in three local election officials report being threatened, abused, or harassed in recent years, and nearly half reported being concerned about the safety of their colleagues and/or staff.[5] Further, 73 percent of local election officials feel that threats have increased in recent years.[6] There are serious effects to threats such as the ones charged here. For instance, over 50 percent of local election workers are concerned that threats, harassment, and intimidation will harm the retention and recruitment of workers to administer elections.[7]

These challenges to the retention and recruitment of election officials and workers have very real consequences in Arizona. In this state, "80% of the state's counties have at

---

[5] *See Local Election Officials Survey*, Brennan Center for Justice at 3 (Apr. 2023), *available at* https://www.brennancenter.org/our-work/research-reports/local-election-officials-survey-april-2023.

[6] *Id*. at 11.

[7] *Id*. at 3.

least one new chief local election official, and 98% of Arizonans will see the 2024 election administered by someone different than the officials who administered the 2020 election."[8] Tellingly, "the officials who left these posts took with them a combined 176 years of experience."[9] And, "[i]n the counties with new chief local election officials, the median amount of experience these officials had dropped from about 10 years to about 1 year."[10] High turnover among election officials and workers is expensive due to costs "to search for, hire, and train new staff" on election administration processes and equipment specific to each office.[11] Further, the loss of institutional knowledge can present serious challenges to the administration and security of elections.[12]

Election officials and workers need to be able to administer and run free and fair elections safely and securely. A sentence of 57 months of imprisonment could push those who would criminally threaten election officials and workers to reconsider their planned conduct, as the public becomes increasingly aware that such criminal conduct can have serious consequences. Further, the victims here—and all individuals who administer our elections—deserve to be able to do their jobs without fear and intimidation, and to know that those who choose to threaten them will face just punishment.

---

[8] *See* Michael Beckel, *et al.*, Issue One, *The High Cost of High Turnover*, at 4 (Sept. 2023), https://issueone.org/wp-content/uploads/2023/09/The-High-Cost-of-High-Turnover-Report.pdf.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 8.

[12] *Id.* at 9-10.

### III. Conclusion

For the foregoing reasons, the United States respectfully requests that the Court sentence Defendant to a Guidelines term of imprisonment of 57 months, to be followed by a period of supervised release.

Respectfully submitted this 4th day of March, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*/s/ Sean K. Lokey*
Sean K. Lokey
Assistant U.S. Attorney

*/s/ Tanya Senanayake*
Tanya Senanayake
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2024, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for the defendant.

/s/ *Tanya Senanayake*
Tanya Senanayake
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice