JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

JEANETTE E. ALVARADO
Arizona Bar #016111
Asst. Federal Public Defender
Attorney for Defendant
jeanette_alvarado@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | No. CR-22-00889-PHX-MTL |
|---|---|
| Plaintiff, | |
| vs. | **Defendant's Reply to Government's Response to Defendant's PSR Objections: Paragraphs 19, 20** |
| James W. Clark, | |
| Defendant. | |

Mr. Clark asks the Court to sustain his objections. The Government's Response does not provide sufficient basis to uphold the contested sentencing enhancements in Paragraph 19 and 20 of the PSR.

**Objection # 1**:

¶19: USSG 2A6.1(b)(1): *No* Evidence of Intent to Carry Out Threat

The government is wrong in its argument that two cursory internet searches warrant application of this six-level enhancement, and that Mr. Clark's unrelated search conducted four days later of "FEMA boston marathon bombing" were, singularly or jointly, evidence he intended to carry out the bomb hoax.

1

### A. Internet Searches: Occurred Post-Offense, Outside Scope of U.S.S.G. 2A6.1(b)(1) Consideration.

First, the Government's assertion that Amendment 549 to USSG 2A6.1(b)(1) does not preclude consideration of post-offense conduct is unavailing. First, nowhere in Amendment 549 does it mention post-offense conduct. Amendment 549 was concerned with making sure pre-offense conduct was included. And, had the U.S. Sentencing Commission meant to include post-offense conduct, it would have written:

> "the court shall consider all conduct occurring prior to the offense, during the offense and *after the offense*. . ."

The Sentencing Commission did not do so. The plain words of Application Note 1 to USSG 2A6.1(b)(1) makes the scope obvious because it reads:

> "In determining whether subsections (b)(1), (b)(2) and (b)(3) apply, the court shall consider **both** conduct that occurred prior to the offense and conduct that occurred during the offense…."

The word "both" clearly limits the scope of conduct to that happening before **and** during the offense only, full stop. Whatever the history behind Amendment 549, the plain language of this guideline and application note is clear, unambiguous and should be followed. The Court should not expand its scope as suggested by the government.

In its reply, the government lists cases where other courts have applied the six-level enhancement to post-offense conduct, but all the cases are distinguishable because the arguments being made in those cases, differ from the arguments Mr. Clark is making: that the scope of conduct to be considered

does not include post-offense conduct. The cases cited by the Government do not even mention Application Note 1's limiting scope.

### These Appeals are not based on Distinguishing Post-Offense versus Pre-Offense or During-Offense Conduct, but on Other Arguments

- *U.S. v. Smith*, 365 F. App'x 781 (9th Cir. 2010): This defendant's appeal focused not on the timing of any post-offense conduct, but that the nature of defendant's conduct was not evidence of steps to carry out the threat. He did not argue the Court could not take consider his post-threat conduct. The objection Mr. Clark is making was not made in the *Smith* case.

- *U.S. v. Dugan*, 232 F. App'x 698 (9th Cir. 2007): This defendant's appeal focused on the argument that the Court could ***not*** consider his **pre**-offense conduct. The objection Mr. Clark is making was not made in the *Dugan* case.

- *U.S. v. Hines*, 26 F.3d 1469 (9th Cir 1994): This defendant's appeal focused on the Court not considering **pre**-offense conduct. The objection Mr. Clark is making was not made in the *Hines* case.

- *U.S. v. Wagoner,* 564 F. App'x 780 (6th Cir. 2014): Defendant's appeal was focused on the nature of his conduct evidencing defendant's goal of getting his social security check, as opposed to threatening the victim-employee. The objection Mr. Clark is making was not made in the *Wagoner* case.

- *U.S. v. Bellrichard*, 62 F.3d 1046 (8th Cir. 1995): This defendant's appeal was based arguing the nature of his conduct, no mention of Application Note and its temporal scope. The objection Mr. Clark is making was not made in the *Bellrichard* case.

- *U.S. v. Green*, 25 F3d. 206 (3rd Cir. 1994): This defendant's appeal was based arguing the nature of his conduct did not merit the enhancement, no mention of Application Note and its temporal scope. The objection Mr. Clark is making was not made in the *Green* case.

- *U.S. v. Thomas*, 155 F.3d 833, 839 (7th Cir. 1998): The Government in that case made the argument that it based the 2A6.1(b)(1) enhancement on the defendant's prior criminal record. The Court held:

    "a district court making a 2A6.1 determination should consider, in addition to relevant conduct, the defendant's overt acts [substantially and directly] connected to the threat."

That holding clarifies that although it approved consideration of post-offense conduct, it is a defendant's **overt** acts, connected to the threat, that can count. The meaning of the word "overt" is defined as "done or shown obviously or publicly; not hidden or secret." *See* Cambridge Dictionary at https://dictionary.cambridge.org/us/dictionary/english/overt. Mr. Clark did not conduct his cursory internet searches openly or publicly. At the time, he subscribed to a VPN through an internet provider. He did not post his searches or results anywhere or send his searches to the victims. In fact, the government obtained the content of his searches by issuing a court order to Google to produce them. Therefore, the holding in *Thomas* is limited to "overt" acts, and the example cited in *Thomas* illustrates it: "after sending a threat, shoots out the windows of his victim's car and truck" – these actions being done in public, being witnessed by the victims and others in the vicinity, should be counted. The internet searches Mr. Clark made in his own home, not displaying or sharing them with anyone, are not analogous.

## 2. *Internet Searches: Not Rising to Level of Conduct Evidencing Intent to Commit Threat in the Real World*

Should the Court nonetheless consider the post-offense searches, the defense maintains the two cursory internet searches are not the type of conduct this six-level enhancement was supposed to apply to, without more. The cases cited by the government (Dkt. 63), further illustrate Mr. Clark's point. Mr.

Clark's cursory searches are nothing like the conduct engaged therein where that enhancement was applied:

- In *U.S. v. Smith*, 365 F. App'x 781 (9th Cir. 2010), defendant arrived at the victim's house with six of his friends after he had made the threat to burn a cross, hang the victim from a tree and rape the victim's wife.

- In *U.S. v. Dugan*, 232 F. App'x 698 (9th Cir. 2007), defendant stipulated that **before** making the threat, he purchased an AK-47 assault rifle; he also stipulated **after** the threat, he obtained an assault rifle and ammunition.

- In *U.S. v. Hines*, 26 F.3d 1469 (9th Cir 1994), defendant stole a gun and traveled from Oregon to D.C. intending to kill President Bush and subsequently told agents he would kill President Bush some other time. After being arrested he later wrote a letter to a local TV station he would kill President Bush in a heartbeat if he could get out of jail.

- In *U.S. v. Wagoner,* 564 F. App'x 780 (6th Cir. 2014), defendant arrived at victim's office with a bat after uttering the threat.

- In *U.S. v. Bellrichard*, 62 F.3d 1046 (8th Cir. 1995), appellate court upheld application of 2A6.1(b)(1) for defendant found guilty of 17 counts of mailing threatening communications over a four year period, to the U.S. Attorney who prosecuted him in an earlier case and a district judge who presided over it, due to (1) the defendant continuing to send threatening communications to the victims even after convicted at trial and (2) testimony from a witness that defendant said he should kill the prosecutor and judge himself.

- In *U.S. v. Green*, 25 F3d 206, (3rd Cir .1994), defendant had his friend – a police officer, who would have access to such protected information, run a check on the victim's license plate to get the victim's address.

- In *U.S. v. Thomas,* 155 F.3d 833, 839 (7th Cir 1998), illustrating enhancement would apply in situation when defendant shoots out the windows of victim's car, after sending a threat.

- *U.S. v. Spangle*, 281 F. App'x 693, 694 (9th Cir. 2008) and 626 F.3d 488 (9th Cir. 2010), after being sentenced to a **57-month** prison sentence for bank robbery, a defendant sent two threatening letters to his probation officer, called the federal public defender's office stating he wanted to kill a judge, and two weeks before his release, sent a third letter to his former probation officer to "look at the calendar" because her time was "running out." He was later found with his probation officer's full name, address, a list with locations on the body where a firearm can be concealed and a list with various methods of how to locate people, including phone books and school records.

In contrast, the evidence shows Mr. Clark did an internet search that lasted one-minute of victim's name and "address" at 9:52 p.m. with no evidence he clicked on any search result that would lead to such information. Then at 9:53 pm he did another search of the victim's name and 'how to kill' and there is no evidence he obtained information he could act upon, or that he made any attempt or plan to act on such information.

In fact, a search with the victim's name and "address," results in the victim's public office address already on the website Mr. Clark had initially gotten on to send his message, and a search with the victim's name and "how to kill" provides no such "how-to" guide or any relevant information to that search, but instead returns results about 'killing' state vouchers, executions regarding death row inmates, and other information unrelated to the query.

Mr. Clark's cursory internet searches are not in any way analogous to the overt acts in any of these cases and this six-level enhancement is not warranted. Those searches do not evince an intent that he was to go through with the threat. He was in Boston thousands of miles away from the victim, heavily intoxicated, without access to transportation to make the cross-country trip.

The government goes to some length to focus on the recipient of the threat not knowing the defendant's intent and nonetheless being frightened by it. Mr. Clark does not contest that fact. Mr. Clark admitted it was a true threat,

which is defined as one meaning to scare another, but not that the threat was real. The victim and law enforcement acted on the content of the internet threat alone, as was obviously necessary – no one is contesting their reaction.

But the facts the government is using to apply the USS 2A6.1(b)(1) enhancement is not based his threat note, but on facts not known to anyone outside of Mr. Clark (neither the victim nor law enforcement), until a much later time after Google disclosed Mr. Clark's internet searches to the government, in response to a subpoena, and after agents combed through them to find these cursory searches. And, again in the *U.S. v. Nickerson*, 782 F. App's 377, 380 (6th Cir. 2019), cited by the government, the decision further states:

> "In analyzing whether a defendant's conduct indicates intent to carry out his threats, this court has adopted the majority rule "that defendant engage in some **overt** conduct in additional to making the threats before a 2A6.1(b)(1) enhancement can be sustained."

And in *Nickerson*, that defendant brandished a knife while lying in wait across the street from the victim's workplace and stated he intended to beat the victim to death. Further, *Nickerson* cites *U.S. v. Wagoner*, 564 F. App'x 780, 782-83 (6th Cir. 2014), as support where that defendant went to victim's office with a bat after threatening to "terminate" the victim-employee.

### 1) FEMA Boston Marathon bombing Internet Searches:

Mr. Clark's subsequent searches four days later had nothing to do with Arizona or the victim in this case and focused on FEMA – which stands for Federal Emergency Management Agency and Boston. Mr. Clark was proud of how Boston pulled together after that tragedy. He stated he had recently watched a documentary and was interested in learning more details – the search was coincidental and unrelated. *PSR, Paragraph 16.* Mr. Clark's assertions made when previously questioned and at the time of the pre-sentence interview,

support his position that this internet search was not conduct evidencing he had an intent to act on any threat, let alone the Arizona threat.

**Objection #2:**
   **PSR, Paragraph 20: Impacted Governmental Functions, but Not Substantial Disruption**

The government has evidence that there was a disruption of governmental function, but not that such disruption was substantial. There is not time frame for the disruption, no accounting of any how long employees were kept away from their jobs, or that some level of funds were lost from the Secretary of State office's being disrupted to do a canine bomb sweep. This is not like the *U.S. v. Dudley*, case because there the threat caused:

- Half of a state courthouse floor to close for two hours
- Two people to be quarantined for several hours due to anthrax scare
- Court proceedings interrupted for two judges for several hours
- Recipient Judge told to go home
- Recipient Judge having to spend many hours with law enforcement
- Recipient judge was given round-the-clock security
- Fire Department Hazardous Materials Teams were called in

In Mr. Clark's case, a staff member interviewed did not readily recall the bomb scare, as one would expect for something so disruptive. However, perhaps because this was still during the pandemic when business as usual was limited by employees working from home (as employees interviewed stated they were during this time – thereby, no disruption for them), employees were not told to go home, but some to move to another floor and others to "shelter in place", and law enforcement did not have to do more complicated screenings with a hazardous materials team, but sufficed with a canine dog because staff said no packages were new or out of place – the *Dudley* case differs from Mr.

Clark's situation. It is the government's burden to show substantial disruption by clear and convincing evidence and should not be excused from providing that necessary proof under either a preponderance of the evidence, and most especially, not under a clear and convincing evidence standard. This enhancement should not be applied.

Mr. Clark requests his objections be sustained.

Respectfully submitted: March 4, 2024.

JON M. SANDS
Federal Public Defender

*s/Jeanette E. Alvarado*
JEANETTE E. ALVARADO
Asst. Federal Public Defender