GARY M. RESTAINO
United States Attorney
District of Arizona

SEAN K. LOKEY
Assistant United States Attorney
Arizona State Bar No. 033627
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: sean.lokey@usdoj.gov

TANYA SENANAYAKE
Trial Attorney
D.C. Bar No. 1006218
Counterterrorism Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave. NW, Suite 7600
Washington, DC 20530
Telephone: 202-514-0849
Email: Tanya.Senanayake3@usdoj.gov

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, <br><br> Plaintiff, <br><br> v. <br><br> James W. Clark, <br><br> Defendant. | No. CR-22-00889-01-PHX-MTL <br><br> **GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS** |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S OBJECTIONS TO DRAFT PRESENTENCE REPORT REGARDING <u>THE ZERO-POINT OFFENDER ADJUSTMENT</u>**

The United States submits this response to Defendant James W. Clark's Objections to the Draft Presentence Report ("Obj."), ECF No. 65. As described below, U.S. Sentencing Guidelines §4C1.1 (Adjustment for Certain Zero-Point Offenders) does not apply here.

## I. THE ZERO-POINT OFFENDER PROVISION DOES NOT APPLY

The zero-point offender provision allows for a reduction of two offense levels for certain offenders who meet the criteria listed in U.S.S.G. § 4C1.1(a). As applicable here, U.S.S.G. §4C1.1(a)(3) requires that defendants seeking the adjustment did not use a credible threat of violence in connection with the offense.

The U.S. Sentencing Guidelines do not define "credible threats of violence," and the government is not aware of a decision in the Ninth Circuit defining this term in Section 4C1.1(a)(3). When interpreting the text of the Sentencing Guidelines, courts "us[e] the ordinary tools of statutory interpretation." *United States v. Herrera*, 974 F.3d 1040, 1047 (9th Cir. 2020) (citation omitted). The court's "interpretation will most often begin and end with the text and structure of the guidelines' provisions themselves." *United States v. Scheu*, 83 F.4th 1124, 1128 (9th Cir. 2023). To discern the plain meaning of a word in the Guidelines, the court may consult dictionary definitions. *Id.* (citation omitted).

With regard to the dictionary definitions of the words in "credible threats of violence," one district court found the following:

> Contemporary dictionaries define "credible" as "[c]apable of being credited or believed." *Credible*, Webster's Third New International Dictionary (1993). Meanwhile, "threat" is defined as "an expression of an intention to inflict evil, injury, or damage on another," *Threat*, Webster's Third New International Dictionary (1993), or as "a declaration, express or implied, of an intent to inflict loss or pain on another," *Threat*, Black's Law Dictionary (11th ed. 2019). Combining these definitions, a "credible threat of violence" is a believable expression of an intention to use physical force to inflict harm.

*United States v. Bauer*, No. 1:21-cr-00386-2, 2024 WL 324234, at *3 (D.D.C. Jan. 29, 2024) (alterations in original).

In this case, Defendant made a credible threat of violence when he transmitted the charged bomb threat. Defendant pled guilty to one count of Interstate Threatening Communication, in violation of 18 U.S.C. § 875(c). Plea Agreement, ECF No. 47, at 2. Defendant stipulated in part that he "knowingly transmitted a communication containing a 'true threat' to injure or kill another person." (*Id*. at 7.) Defendant conceded that he "meant

to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals, and that a reasonable person who read [his] message would have interpreted that message as a true threat." (*Id*. at 7 n.1.) Defendant further "acknowledge[d] that the circumstances of his sending the message . . . were such that it may reasonably be believed that Defendant placed or would detonate an explosive or other lethal device in a place of public use or a state or government facility." (*Id*. at 8.) Defendant also admitted that he "sent the web contact form message . . . for the purpose of issuing a true threat and acknowledge[d] that a reasonable recipient would have interpreted the web contact message that he transmitted as a true threat." (*Id*.)

Even apart from the Defendant's own admissions here, Defendant's message was on its face a credible threat of violence. First, the record shows that the recipients of the message at the Arizona Secretary of State's Office and responding law enforcement credited, or believed, the content of the message: that defendant would detonate an explosive device. In response to Defendant's message, law enforcement partially evacuated the Arizona Secretary of State's Office and the floor of the Arizona Governor, which is located in the same building as the Arizona Secretary of State. (Draft Presentence Investigation Report ("PSR"), ECF No. 53, ¶ 7.) Law enforcement ordered the governor and other employees in the building to shelter in place. (PSR ¶ 12.) Meanwhile, the Department of Public Safety ("DPS") searched for an explosive device with its canines on the floors of the Arizona Governor and the Arizona Secretary of State's Office. (*Id*.) DPS conducted bomb sweeps of both the Public Official's personal residence and her vehicle. (*Id*.) At bottom, the law enforcement responses to Defendant's bomb threat impacted official business at the government building. (*Id*.) Separately, after investigation into the source of the threat and tracking the IP address for the threat, DPS coordinated with the Massachusetts State Police to approach and interview Defendant on February 25, 2021. (*Id*. ¶¶ 7, 8.) Defendant's threatening message was credible.

Second, Defendant's message was a threat. Defendant threatened to detonate an explosive device, which by its nature is "an expression of an intention to inflict . . . injury,

or damage on another," *Threat*, Webster's Third New International Dictionary (1993), and "a declaration . . . of an intent to inflict loss or pain on another," *Threat*, Black's Law Dictionary (11th ed. 2019). As described above, Defendant's message was a "believable expression of an intention to use physical force to inflict harm," *Bauer*, No. 1:21-cr-00386-2, 2024 WL 324234, at *3, and thus a credible threat of violence.

In *United States v. Bauer*, the defendant was convicted after a bench trial on several charges stemming from her involvement in the January 6, 2020 riot at the U.S. Capitol. *United States v. Bauer*, No. 1:21-cr-00386-2, 2024 WL 324234, at *1 (D.D.C. Jan. 29, 2024). The defendant there argued that she was eligible for a zero-point offender adjustment. The court determined that the defendant was not eligible for this reduction based on its finding that the defendant had engaged in violence in shoving a police officer at the U.S. Capitol, and separately that defendant had made credible threats of violence when yelling threatening statements at law enforcement on the grounds of the U.S. Capitol. *Id*. at *2 ("While rioting in the Capitol Rotunda, [defendant] both used violence when she shoved Officer Coley and made credible threats of violence when she incited the mob to "hang" Speaker Pelosi.")

With regard to the latter, analogous to the facts presented in this case, the court found that the defendant had made credible threats of violence when she yelled, (1) "We want Nancy Pelosi, that's who we want"; (2) "Bring them out! You bring them out or we're coming in!" and (3) "Bring Nancy Pelosi out here now! We want to hang that f[***]g b[***]h! Bring her out!" *Id.* at *3. With this finding, the court determined that defendant was not entitled to the zero-point offender adjustment. In *Bauer*, the defendant argued that the threats were not "credible" because she did not have the ability to carry out the threat at the time of the offense. *Id*. However, the court looked to the context of the statements to determine whether the threat was credible. *Id*. The court found that the defendant made the statements above at a time when "[s]he was joined by many rioters who had crossed police lines into a restricted area and had even forced officers to temporarily retreat." *Id*. In light of this context, the court determined that "the outnumbered police officers in the

Rotunda—and any legislators within earshot—would have reasonably believed that [defendant's] violent threats meant that she would harm them, possibly with the aid of fellow rioters." *Id*. at *4. Further, the court found that, regardless of whether the defendant "could have—or would have—hanged Speaker Pelosi, the circumstances make it clear that her threats were not 'innocent hyperbole.'" *Id*.

Here, Defendant similarly argues that his threat was not credible because "he had no means, intent, plan, process, ability, or desire to carry out the threat he sent and made no steps to do so." (Obj., ECF No. 65, at 4.) But, in context, given that the employees at the Arizona Secretary of State's Office did not know the identity of the sender of the communication and had no way to determine whether the bomb threat posed an imminent and serious danger, it was entirely reasonably for the victims here and responding law enforcement to believe that Defendant's message meant that Defendant would detonate an explosive device. As described above, Defendant in fact admitted as such in the plea agreement. (Plea Agreement, ECF. 47, at 8.)

## II. DEFENDANT FAILS TO PROVIDE SUPPORT FOR THE APPLICATION OF THE ADJUSTMENT HERE

Defendant cites to a memorandum opinion in *United States v. Tyng Jing Yang*, No. 23-100, and *United States v. Zachariah Boulton*, No. 23-284, 2024 WL 519962, at *1 (D.D.C. Feb. 9, 2024). (*See* Obj., ECF No. 65, at 2-4.) These cases are wholly inapposite. In these cases, neither defendant was charged with or convicted of making a threatening interstate communication, in violation of 18 U.S.C. 875(c), as Defendant was here.

In *United States v. Yang*, the government argued that defendant's actions on the grounds of the U.S. Capitol on January 6, 2020, constituted "violence" within the meaning of U.S.S.G. § 4C1.1(a)(3). No. 23-100, 2024 WL 519962, at *4. Unlike in the instant case, there "[t]he government [did] not argue that [defendant] 'use[d] . . . credible threats of violence in connection with the offense.'" *Id*. at *4 n.3. The court found that defendant's relevant conduct—namely, that he briefly made physical contact with two officers in what the court deemed to be a nonconfrontational manner—did not constitute "violence" within

the meaning of U.S.S.G. § 4C1.1(a)(3). This clause of U.S.S.G. § 4C1.1(a)(3) is not at issue here.

In *United States v. Zachariah Boulton*, the defendant was charged with, and pleaded guilty to, entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), for his conduct at the U.S. Capitol on January 6, 2020. No. 23-284, 2024 WL 519962, at *2. After he left the District of Columbia that day, the defendant posted a message on the platform TikTok:

> [T]he tree of liberty from time to time needs to be watered with the blood of patriots and tyrants. Don't come at me, oh, you lowered yourself by going into that Capitol building. F*** that. We need to send them a message now. That they will understand, and that's it. No property was really destroyed other than a window. But we made ourselves clear we will not stand by. And shits gonna get real. If you're not ready for that, go hide.

*Id*. at *2. The court looked to the context of the message to determine whether the threat was credible. *Id*. at *5. After considering "the nature of [the defendant's] statements, his conduct on January 6, and the fact that these statements occurred after the offense when [the defendant] was no longer present in D.C.," the court found that the threats were not "credible threats of violence [used] in connection with the offense." *Id*. Importantly, and central to the analysis, the defendant in that case had left the grounds of the U.S. Capitol, and the District of Columbia, when he had made a threat about criminal conduct at the U.S. Capitol.

Here, Defendant made a threat—the offense conduct itself—that he would detonate an explosive device at a future date and time if a public official in Arizona did not resign; in context, it was reasonable to believe that the detonation would occur. The recipients of the threat did not know the whereabouts of Defendant and did not know whether there was an explosive device in the vicinity. As Defendant himself admits in the plea agreement, ECF No. 47, at 8, Defendant's threat was credible.

The other cases to which Defendant cites, Obj., ECF No. 65, at 3-4, fail to support Defendant's argument and, in fact, are consistent with the government's position. In

*United States v. Johnson*, Obj., ECF No. 65, at 2, the court determined that the defendant had "made a credible threat to use violence" under U.S.S.G. § 2D1.1(b)(2), which provides for an increase in the offense level in such cases. *United States v. Johnson*, 64 F.4th 1348, 1352 (D.C. Cir. 2023). In that case, the defendant argued, as Defendant does here, that his statements did not constitute threats because he did not intend to use the threatened violence. *Id*. But the court admonished, as relevant here, "[A] threat is a threat, even if the speaker never intends to carry it out." *Id*. (citing *Elonis v. United States*, 575 U.S. 723, 740 (2015)). In the context of the defendant being armed and having several prior convictions, and that the target was in debt to the defendant, the court found that the defendant had made a credible threat. *Id*.

In *United States v. Miller*, Obj., ECF No. 65, at 3-4, the court conducted an analysis about whether to involuntarily medicate the defendant to restore him to competency to stand trial. No. 22-CR-00495, 2024 WL 363731, at *3 (N.D. Ohio Jan. 26, 2024). In that case, the defendant had sent over a thousand messages to a federal law enforcement agent over the course of one year, with approximately fourteen of those messages deemed threatening. *Id*. at *2, 4. The majority of the thousand messages did not have to do with the recipient law enforcement agent. *Id*. at *2. In context, the court determined that the messages did not pose a credible threat of violence. *Id*. at *4. To the extent that the court in that case required temporal and spatial proximity between the defendant and the target of the threat, that analysis may apply to some, but not all, threats involving physical imminence, such as brandishing a gun while threatening to use the firearm on the target. Here, though, Defendant created temporal proximity with the use of a deadline for the Attorney General to resign in order to avoid Defendant's promised detonation of the explosive device. And, as described above, the recipients of Defendant's message had no idea where he—or the explosive device—was located.

In *United States v. Pineda-Duarte*, Obj., ECF No. 65, at 4, the Sixth Circuit affirmed the district court's finding that the defendant had not made a "credible threat" for application of the § 2D1.1(b)(2) enhancement. 933 F.3d 519, 522 (6th Cir. 2019). This is

so because the defendant did not make a threat—or any utterance promising harm—before hitting an officer with a shovel. *Id*. The court noted that the enhancement applied in cases where "one who, with the intent to injure another, credibly communicates that intent, without acting on it—for example, when one credibly threatens to hit someone with a shovel, but has not yet swung the shovel." *Id*. In other words, the enhancement is "applicable where the defendant credibly threatens a violent act, but where that act has not yet come to fruition." *Id*.[1] This is exactly what happened here.

## CONCLUSION

For the above reasons, the government requests that the Court deny Defendant's objection to the Draft Presentence Report, ECF No. 65, and find that the zero-point offender adjustment does not apply.

Respectfully submitted this 4th day of March, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

Sean K. Lokey
Assistant U.S. Attorney

*/s/ Tanya Senanayake*
Tanya Senanayake
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice

---

[1] In both *United States v. Overstreet*, 693 F. App'x 374, 375 (5th Cir. 2017), and *United States v. Sykes*, 854 F.3d 457, 460 (8th Cir. 2017), as Defendant cites at Obj., ECF No. 65, at 4, each court determined that the defendants had made credible threats of violence under U.S.S.G. § 2D1.1(b)(2) when they brandished a gun. These cases present wholly distinct fact patterns and fail to controvert the government's showing here that Defendant made a credible threat of violence.

- 8 -

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2024, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for the defendant.

/s/ *Tanya Senanayake*
Tanya Senanayake
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice