GARY M. RESTAINO
United States Attorney
District of Arizona

SEAN K. LOKEY
Assistant United States Attorney
Arizona State Bar No. 033627
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: sean.lokey@usdoj.gov

TANYA SENANAYAKE
Trial Attorney
D.C. Bar No. 1006218
Counterterrorism Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave. NW, Suite 7600
Washington, DC 20530
Telephone: 202-514-0849
Email: Tanya.Senanayake3@usdoj.gov

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, <br>         Plaintiff, <br> v. <br> James W. Clark, <br>         Defendant. | No. CR-22-00889-01-PHX-MTL <br><br> **GOVERNMENT'S RESPONSE TO SENTENCING MEMORANDUM** |

### UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

The United States submits this response to Defendant James W. Clark's Sentencing Memorandum and Downward Variance Request ("Def.'s Sentencing Mem."), ECF No. 66. At the outset, the government recognizes that Defendant has faced challenging circumstances during his life and is aware of no information contravening Defendant's

representations that he has engaged in recovery and rehabilitation efforts since close to the time of the offense. But the government also notes that Defendant's actions caused government employees to fear for their lives and safety and caused law enforcement to expend resources to address what it deemed to be an immediate threat to public safety. The government respectfully posits that a sentence within the Guidelines is consistent with application of the sentencing factors and is warranted based on the facts here. The government further submits that a term of probation, intermittent incarceration, or home confinement would be wholly inappropriate and would not vindicate the rights of the victims or the public.

I.  A SENTENCE WITHIN THE GUIDELINES IS APPROPRIATE UNDER THE SENTENCING FACTORS

The Government has addressed the application of the sentencing factors delineated in 18 U.S.C. § 3553(a) in its sentencing memorandum, ECF No. 67, and incorporates those arguments here.

The government maintains that the Guidelines calculations set forth in the Presentence Investigation Report ("PSR"), ECF No. 73, are correct, that the various sentencing enhancements set forth therein are applicable, and that Defendant does not qualify for a reduction as a zero-point offender because his offense was one credibly threatening violence. Beyond this, Defendant's Sentencing Memorandum essentially requests a substantial downward variance based on: 1) Defendant's post-offense involvement in rehabilitation programs to address addiction and mental illness issues that Defendant states led him to commit the offense; and 2) an alleged disparity between a Guidelines sentence here and the sentences that were imposed in various other cases in this district and elsewhere, where the threat conduct purportedly was more egregious than Defendant's conduct here.

The government does not dispute Defendant's significant rehabilitative efforts here, *i.e.*, that he has been diligently participating in inpatient and outpatient addiction treatment programs since approximately one month after he transmitted the threat. The government

acknowledges such efforts; that such efforts set Defendant apart from a great many other defendants; and that such efforts reasonably can be found to establish a basis for a variance here. The government also recognizes that Defendant sent a bomb threat here on a single occasion. And it acknowledges the reasonable principle that more egregious conduct should generally result in a higher sentence. Defendant's conduct here is plainly more limited than situations involving multiple threats, multiple targeted victim offices, or extensive stalking campaigns for partisan, hate-filled, or extortionate reasons. While Defendant admitted that he had the intent to frighten when he sent the threat here, the government reasonably recognizes that his conduct did not encompass these other aggravating factors.

At the same time, even absent such factors, Defendant's conduct here was unquestionably serious, engendering fear, causing canine searches and a bomb sweep of the Public Official's home and office, and resulting in partial evacuations of government offices. The Guidelines calculation here is correct based on Defendant's own conduct, which qualifies for various enhancements involving threatening a public official, engaging in conduct evidencing intent to carry out the threat, and the substantial disruption of government business, as the government has argued. (*See* Gov't Resps. to Def.'s Obj., ECF Nos. 63, 69.)

In describing the nature of the offense, Defendant claims that his threat "was a one-time event and always a hoax." (Def's Sentencing Mem. at 3.) Defendant admitted that he transmitted a threat—a "true threat," meaning that, as Defendant stipulated, Defendant meant to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals, and one that a reasonable person who read Defendant's message would have interpreted as a true threat. (Plea Agreement, ECF No. 47, at 7 n.1.) Importantly, the "prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Virginia v. Black*, 538 U.S. 343, 360 (2003) (citations omitted). The record is clear that Defendant

put government employees in fear of violence and disrupted state government functions: These are the harms that Defendant caused here, and which should be considered at sentencing. Defendant's statements now that he was not intending to carry out his threat, and in fact detonate an explosive device, Def.'s Sentencing Mem. at 3, were not then known to the recipients of the message or to responding law enforcement. The harms contemplated by the charged statute—fear and disruption—came to fruition here, and the fact that other harms—such as the detonation of a bomb—did not come to pass simply does not expunge the former.

Defendant also claims that a Guidelines sentence would "punish him more severely than others in similar circumstances and [] run afoul of federal sentencing law." (Def.'s Sentencing Mem. at 4.) In support of Defendant's argument that courts have issued more lenient sentences than the Guidelines sentence that the government seeks here, Defendant summarizes public facts from cases in Arizona and elsewhere, citing to press releases that were issued after sentencings. (*Id*. at 5-8.) But Defendant has not set forth the Guidelines range for these other cases, nor does Defendant indicate which sentences were within the Guidelines range for that defendant or were the result of a variance. Defendant has not described the nature of the offense in each case, including the interests of and impact on victims; the defendants' criminal history; or the aggravating and mitigating circumstances that each court considered when crafting a just sentence. Each case presents unique facts, and, as they must, courts engage in individual sentencing determinations based on facts that generally are not publicly available. Therefore, the government respectfully submits that this comparison in which Defendant invites the Court to engage, without the benefit of recourse to all of the relevant facts that each court considered in each case, does not show that a Guidelines sentence here would create a disparity in sentencing for similarly situated defendants.

In sum, the government respectfully acknowledges that the mitigation and rehabilitation materials submitted by Defendant and the lack of aggravating circumstances present a basis for Defendant to reasonably argue for a variance. Defendant has made

several objections to the calculation of the Guidelines that have yet to be resolved. The government intends to recommend a sentence within the Guidelines, regardless of whether the Court adopts the government's or Defendant's position as to the enhancements that would most significantly affect Defendant's ultimate Guidelines range. As such, and in light of the impact that Defendant's conduct had on the victims, particularly as to disruption and the fear that victims felt, the government takes no position on whether the Court should grant a variance.

## II. PROBATION, INTERMITTENT SERVICE, AND HOME CONFINEMNT WOULD BE INAPPROPRIATE HERE

Defendant requests probation, the intermittent service of any term of imprisonment, and home confinement, Def's Sentencing Mem. at 1, 2, 8-9, terms that are inappropriate on several grounds, including that they would undermine the sentencing factors in 18 U.S.C. § 3553(a). As has been briefed previously, Defendant caused many individuals to fear that their lives were in danger, and he caused substantial disruption to two government offices. A term of custodial, continuous incarceration accounts for the seriousness of the offense, which strikes at one of the tenets of our government: that public officials should be able to do their jobs free from fear and intimidation. And given the number of public officials and election workers who have faced threats to their lives and the safety of their families, such a term of imprisonment is necessary for purposes of general deterrence.

Additionally, the imposition of probation, intermittent confinement, or home confinement as proposed by Defendant would undermine the seriousness of the offense and ultimately not reflect the interests of the victims or public here. The record shows that Defendant did not take responsibility for the threat when state law enforcement interviewed him one week after the threat. (PSR ¶ 8.) Even now, Defendant appears to be wavering in truly accepting responsibility for his conduct. Defendant attempts to have it both ways—to distance himself from the charged conduct and the requisite subjective intent underlying the charge by arguing that he was "under the influence of drugs and alcohol," ECF No. 58,

at 6, when he committed the offense, while accepting the benefits of a plea for which Defendant has admitted that he had the "purpose of issuing a true threat" when he transmitted the charged bomb threat. (Plea Agreement, ECF No. 47, at 8.) A custodial term of incarceration here is necessary both to show Defendant the seriousness of his actions and to justly hold Defendant accountable for his criminal conduct.

Further, the calculation of the Guidelines range in the Presentence Investigation Report, ECF No. 73, is correct, and therefore probation is not authorized under the U.S. Sentencing Guidelines. Though only advisory for this Court, the Guidelines state that "a sentence of probation is authorized if: (1) the applicable guideline range is in Zone A of the Sentencing Table; or (2) the applicable guideline range is in Zone B of the Sentencing Table and the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention as provided in subsection (c)(3) of §5C1.1 (Imposition of a Term of Imprisonment)." U.S.S.G. §5B1.1. The Guidelines further state: "Where the applicable guideline range is in Zone C or D of the Sentencing Table (i.e., the minimum term of imprisonment specified in the applicable guideline range is ten months or more), the guidelines do not authorize a sentence of probation." U.S.S.G. §5B1.1, Application Note 2 (citation omitted). According to the Presentence Investigation Report, the applicable Guidelines range in this case is in Zone D, and probation is not authorized under the Guidelines. PSR ¶ 59; *see also* U.S.S.G. §5C1.1 ("If the applicable guideline range is in Zone D of the Sentencing Table, the minimum term shall be satisfied by a sentence of imprisonment.").

Similarly, intermittent imprisonment and home detention are not available here. The U.S. Sentencing Guidelines state that, "where the applicable guideline range is in Zone D of the Sentencing Table (i.e., the minimum term of imprisonment specified in the applicable guideline range is 15 months or more), the minimum term must be satisfied by a sentence of imprisonment without the use of" intermittent confinement, community confinement, or home detention. U.S.S.G. §5C1.1, Application Note 9.

## III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence Defendant to a Guidelines term of imprisonment, not to include probation, home confinement, or intermittent service, to be followed by a period of supervised release.

Respectfully submitted this 7th day of March, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona


*/s/ Sean K. Lokey*
Sean K. Lokey
Assistant U.S. Attorney


*/s/ Tanya Senanayake*
Tanya Senanayake
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2024, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for the defendant.

/s/ *Tanya Senanayake*
Tanya Senanayake
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice